UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARIAN E. DOHERTY,
as Guardian of Frances R. Gorman
and Executor of the Estate of
Patrick J. Gorman,

                Plaintiff,

vs.                                      CASE NO. 2:18-cv-377-FtM-29UAM

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA, a foreign corporation
authorized to do business in the State of Florida,

                Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT, ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Marian E. Doherty, as Guardian of Frances R. Gorman and Executor of the Estate of Patrick J. Gorman, files this Response to Defendant, Allianz Life Insurance Company of North America's Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 31) (Motion for Summary Judgment) and states:

### Introduction

The Motion for Summary Judgment filed by Allianz Life Insurance Company of North America (hereinafter "Allianz") must be denied as (1) Plaintiff's causes of action for negligence and breach of fiduciary duty are torts independent of any contractual duties under the terms of the annuity contracts, (2) Allianz owed a fiduciary duty under Florida law; (3) Patrick and Frances Gorman have been injured by the improper surrender of the annuity contracts, including the surrender penalties retained by Allianz; and (4) Allianz is

not relieved of its liability because of an intervening act, where the intervening act is exactly what Allianz was supposed to protect against.

## Statement of Material Facts

1.      Allianz' Introduction and Statement of Undisputed Material Facts is inaccurate, incomplete and misleading and the following facts are necessary for a full and complete understanding of the negligence and breach of fiduciary duty committed by Allianz in the surrender of Patrick and Frances Gorman's annuities.

2.      In May, 2003, Patrick and Frances Gorman applied for and received two separate Bonus Dex annuities which are qualified rollover IRA annuities (Allianz Depo Ex. 10 and 29).  Patrick's policy was issued for $222,643.30 and Frances' policy was issued for $111,952.50 (Allianz Depo Ex. 12 and 31).  Frances paid $103,147.80 and Patrick paid $201,591.00 by transfer of funds from their respective Merrill Lynch retirement accounts (Allianz Depo Ex. 30 and 11; Doherty Affidavit, ¶ 2).  Over the years Frances and Patrick made various changes to the allocations on these annuities between the S&P 500, Nasdaq 100 and interest only options.  The last allocations provided for a reallocation of 25% to the S&P 500 and 75% to the Nasdaq 100 (Allianz Depo Ex. 16, 35, 19 and 38).  Patrick and Frances Gorman maintained a conservative investment strategy as reflected by their respective policy histories (Allianz Depo Ex. 21 and 28).  Patrick requested and received the maximum penalty free withdrawal from his Allianz policy in 2007, 2008, 2009, and 2010 (Allianz Depo Ex. 17, 18, 20 and 22).  Likewise, Frances requested the maximum penalty free withdrawal in 2007, 2008, and 2010 (Allianz Depo Ex. 36, 37 and 39).  In each of these requests a full, complete and separate request form for each contract was submitted and accepted by Allianz in accordance with their policies and standard operating procedures.  In November, 2012, Patrick submitted his request to receive annual required minimum

2

distributions going forward (Allianz Depo Ex. 24).  Again, Patrick submitted, in accordance with Allianz policies and procedures, a full and complete request form.

3.     In 2010, both Frances and Patrick Gorman provided Allianz with separate Authorizations to Release Information to, Marian E. Doherty.  The Authorizations to Release Information specifically provide that: "Authorized person(s) can only request information by contacting us via telephone.  Authorized person(s) cannot act on your behalf to make any changes **or request funds**, only to receive information and/or request documents/forms on your behalf." (emphasis added)  (Allianz Depo Ex. 23 and 40). Frances and Patrick submitted full, complete and separate authorizations for their respective contracts.

4.     In 2012 Patrick Gorman submitted an additional Authorization to Release Information to Caroline Gorman Silha and Frances Gorman which again stated that: "Authorized person(s) can only request information by contacting us via telephone. Authorized person(s) cannot act on your behalf to make any changes **or request funds**, only to receive information and/or request documents/forms on your behalf." (emphasis added) (Allianz Depo Ex. 25).  Patrick Gorman submitted a full, complete and separate authorization for his contract.

5.     In 2012 Frances Gorman submitted an additional Authorization to Release Information to Caroline Gorman Silha and Patrick Gorman which again stated that: "Authorized person(s) can only request information by contacting us via telephone. Authorized person(s) cannot act on your behalf to make any changes **or request funds**, only to receive information and/or request documents/forms on your behalf." (emphasis added) (Allianz Depo Ex. 41).  Frances Gorman submitted a full, complete and separate authorization for her contract.

3

6.     Allianz has produced 25 recorded calls pertaining to Frances and Patrick's policies from 2007 through 2012. The calls comply with Allianz' standard operating procedures and the Authorizations to Release Information on file with Allianz. Allianz confirmed the identify of the caller and spoke directly with the contract holder if there was a request for funds. Moreover, the voices and content of these calls were consistent with gender and age of the contract owner (Doherty Affidavit ¶ 3).

## Allianz Improperly Surrenders the Annuities

7.     Beginning in May, 2015, Allianz allowed and facilitated an improper surrender of Patrick and Frances Gorman's annuities resulting in severe financial penalties, tax consequences, and the ultimate misappropriation of the cash value of these policies.

8.     Allianz' breaches began shortly after Patrick and Frances' 2015 Annual Contract Statements were mailed reflecting Patrick's annuitization value of $289,723.16 and Frances' annuitization value of $141,602.00 as of May 12, 2015 (Allianz Depo Ex. 26 and 42). That same day well being checks were being made on Patrick and Frances Gorman by the Gurnee Police Department because Patrick and Frances physically and cognitively could no longer handle their affairs (App. 1) (Doherty Affidavit ¶ 4).

9.     On May 21, 2015 at 8:06 a.m. Barbara Gorman made the first of numerous calls to Allianz posing as her 78-year old mother (Doherty Affidavit ¶ 5). A review of the recorded calls clearly establishes that the caller is not a 78-year old woman. Moreover, a very simple comparison to one of the many prior calls made by Frances Gorman would have further confirmed that the caller was not who she represented herself to be. The caller stated that the purpose of the call was to surrender the cash value as expeditiously as possible. When the caller was advised it would take four business days the caller inquired multiple times if there was a possibility of expediting the withdrawal. The urgency and

desperation in surrendering the contracts is evident, and escalates, in the calls thereafter (Allianz Depo Ex. 43).[1]

10.     Barbara Gorman calls back at 12:27 p.m., again posing to be her 78-year old mother and speaks with Allianz representative, Bobby Roper.  The caller states that she wants to cash out both policies, however, neither Barbara Gorman nor Frances Gorman are authorized to request funds on Patrick's contract.  The caller states that she needs the funds by next Friday, she gives Caroline Silha's email address and the Allianz representative advises her to put both policy numbers on one form to "annuitize" the policies.  This is Allianz Form 2043.  However, the caller states multiple times that she needs $210,000.00 between both policies and "she needs it by next Friday."  Having now been advised that the caller is looking for a surrender of the policies and not an annuitization, Allianz advises her that she needs to fill out Form S2067 and W4P for taxes (Allianz Depo Ex. 44).  Again, a simple review of the recording, comparison to past calls, and the terminology used by the caller, clearly indicates that this is not the 78-year old contract holder.  The Allianz representative never advised the caller that she could use one form for both contracts as one withdrawal request form is required for each request.  Moreover, Allianz' policies and standard operating procedures do not allow for multiple contracts by different owners to be surrendered on a single withdrawal request form (Allianz Depo Ex. 2, App. 2 and 3).  The caller concluded the telephone call with the statement "okay, cool" (Allianz Depo Ex. 44).  Not a statement one would expect from a 78-year old woman.  Allianz fails in this call and every single call thereafter to speak with Patrick Gorman regarding his contract (Doherty Affidavit ¶ 6).

---

[1] Call transcripts were either created by a court reporter or provided by Allianz.  Plaintiff will provide the calls themselves if the Court prefers.

11.     Immediately after the call Mr. Roper emails Caroline Silha a cover letter on withdrawals, the withdrawal request form S2067 and a blank W-4P (App. 2). The cover letter clearly indicates the Allianz requirement that "[a] new withdrawal form is required with each request."

12.     An hour after the call, Caroline Silha faxes and emails back to Bobby Roper a single withdrawal request form bearing the contract numbers for both Patrick and Frances' individual annuity contracts with the purported signatures of Frances and Patrick Gorman (Allianz Depo Ex. 27 and 46). Allianz representatives processing the withdrawal request did not raise an objection to both contracts being noted on the same request form despite the fact that instructions accompanying the form require new withdrawal forms with each request. In addition, the form itself is not formatted to allow multiple contract numbers (Allianz Depo Ex. 2, App. 2). In depositions, Allianz has admitted that this request on May 21, 2015 is not in good order for Patrick because the signature does not match the signature on file (Allianz Depo Pg. 144, Lines 1 – 24 and Ex. 50). However, despite its policies and standard operating procedures, Allianz claimed at deposition that this request was in good order for Frances asserting that the Allianz representative had the discretion and could make the judgment call as a basis to accept a single form with two contracts owned by two different people (Allianz Depo Pg. 144, Line 1 – Pg. 145, Line 3). However, no such discretion or judgment calls are provided for in Allianz' standard operating procedures and the "discretion" and "judgment call" made by the representative was with regard to Form 2043 to annuitize the contracts and not with regard to Form S2067 to surrender the contracts (Allianz Depo Pg. 144, Line 1 – Pg. 145, Line 3, Ex. 44 and App. 3). It is inconceivable that a request that is not in good order for Patrick is in good order for Frances. Moreover, Allianz admitted at deposition that their computer processing system

only permits the processing of one contract at a time further supporting the Allianz requirement that "[a] new withdrawal form is required for each request." (Allianz Depo Pg. 236, Line 20 – Pg. 237, Line 3 and App. 2).

13.     Allianz erroneously contends in its Motion for Summary Judgment that Marian Doherty concedes to the execution of the withdrawal request form by Frances Gorman. However, Marian Doherty clearly stated in her deposition that Frances Gorman had trouble with Parkinson's, that it was hard for her to sign her signature and that she believed Frances was presented with a piece of paper and asked to put her name on it (Doherty Depo Pg. 32, Lines 3 -24).

14.     The following day on May 22, 2015 at 3:08 p.m. Barbara Gorman again calls posing as her 78-year old mother to check on the status of the surrender paperwork (Allianz Depo Ex. 45). The caller's urgency and exigency in getting the funds escalates when Allianz advises the caller that it will take eleven business days because the surrender is over $100,000.00 (referring to Patrick's surrender amount). The caller again advises Allianz that she needs the money by Friday and states that she is "cashing **his** out" and is not going to have it in time for what we need it for. The caller's desperation is evident in this call when she states that I need a certain amount of money by next Friday. Moreover, the caller's intent to "request funds" is unmistakable. Allianz, rather than recognizing the clear red flags with regard to the attempted surrender, assists the caller in expediting the process by advising her to have Patrick send in a waiver of the conservation period to get the money faster. When the caller states that Patrick is not available, the Allianz representative instructs her to have a letter drawn out, have him sign, date and fax back (Allianz Depo Ex. 45). So in this instance, Allianz is advising the caller on how to waive Patrick's conservation period to acquire his funds faster when this caller had no authority to request funds or take

7

any actions on this contract.

15.     A mere 1.5 hours later, Caroline Silha emails and faxes to Robert Roper a handwritten letter purporting to waive Patrick's conservation period to surrender the policies and acquire the funds as quickly as possible (Allianz Depo Ex. 47 and 48). This letter, like the request form, bears the identical forged signature of Patrick Gorman.

16.     Allianz contends that there were numerous written and telephone communications regarding the surrender of Patrick's annuity in an attempt to establish some authority for the surrender by Patrick Gorman. However, Allianz never had direct contact with the contract owner, Patrick Gorman. All telephone conversations were either with Caroline Silha or Barbara Gorman, the latter impersonating Frances Gorman (Doherty Affidavit ¶ 5 and ¶ 6). The withdrawal request form, W-4P and waiver of conservation period letter faxed and emailed to Allianz on May 22, 2015 with the purported signature of Patrick Gorman are all the same and were clearly rejected by Allianz for not being a "match" to the signature on the original application (Allianz Depo Ex. 50). It is undisputed that there was no telephone contact in 2015 with Patrick Gorman, the owner of the annuity contract (Doherty Affidavit ¶ 6).

17.     Allianz sent a letter to Frances Gorman dated May 26, 2015 and advised Frances Gorman that Allianz was going to process the request to fully surrender the annuity unless a signed copy of the letter was received within ten business days (Allianz Depo Ex. 51).

18.     Over the next several days Barbara Gorman, posing as her 78-year old mother, places numerous calls to facilitate the surrender and acquire Patrick and Frances' funds (Audio App. 1, 2, 3). In these calls the caller confirms waiver of the conservation period, expresses extreme urgency in getting the funds quickly, asks for funds to be wired to an

attorney and not the contract owner, and demands quicker processing (Audio App. 1, 2, 3). The caller advises Allianz in these calls that Patrick Gorman is in the hospital and unavailable (Audio App. 1, 2 and 3). On the May 28, 2015 call, Barbara Gorman canceled the surrenders, which was acknowledged by Allianz. (Audio App. 2, Ex. 52). Allianz did not generate a letter acknowledging the cancellation of the surrender requests. However, the cancellation of the surrenders was documented in the Policy History Journal and on the Allianz processing system (Depo Ex. 28 and 52). Allianz' standard operating procedures require that a written request must be made by each policy owner to initiate a surrender of a policy. (App. 3, Bates 637). In addition, Allianz requires a new withdrawal form with each request. (App. 2). Since the first surrender request submitted on May 21, 2015 was cancelled, a new withdrawal request form was required. Nevertheless, Allianz reinstated the surrender requests the following day over the phone without a new withdrawal request form. (Audio App. 3).

19.     On June 1, 2015, prior to the expiration of the 10 days set forth in the May 26, 2015 letter and without a valid withdrawal request, Allianz surrendered Frances Gorman's contract and wired $78,052.63 to a Regions account which was thereafter misappropriated by Barbara Gorman and Caroline Silha (Doherty Depo, Ex. 6) (Doherty Depo Pg. 58, Line 9 – Pg. 59, Line 3).   Allianz kept $54,896.00 which is the difference between the annuitization value and surrender value, as a surrender penalty (Allianz Depo Ex. 51).  A three tier annuity disbursement review was never conducted and Allianz relied upon an overseas vendor to review the requests (Allianz Depo Pg. 178, Line 25 – Pg. 179, Line 17 and Pg. 217, Line 15 – Pg. 218, Line 11 and Ex. 54 and 55).  Allianz, in deposition, could not confirm whether the overseas vendor had been trained on the policies and standard operating procedures of Allianz (Allianz Depo, Pg. 178, Line 25 – Pg. 179, Line 17).

20.     Thereafter on the morning of June 2, 2015, Barbara Gorman, again posing as her 78-year old mother, calls in an attempt to hasten the surrender of her father's policy for which neither she nor Frances Gorman had any authority. She advises that she is going to send Allianz a Power of Attorney in order to expedite the surrender (Audio App. 4). Later that day at 1:40 p.m. Caroline Silha sends a fax and email with a letter, Power of Attorney, and a typed waiver of the conservation period (Allianz Depo Ex. 58 and 59). Caroline Silha asks for further communications to be by email and telephone in order to expedite the process, provides her and Barbara Gorman's phone numbers as contacts and directs that the funds be transferred to Regions as soon as possible (Allianz Depo Ex. 59). These types of communications and urgency, including the purportedly typed-written letter by Frances Gorman, are wholly inconsistent with Patrick and Frances' prior dealings with Allianz (Allianz Depo Ex. 21 and 28).

21.     Two days later, Allianz recognized and acknowledged that the Power of Attorney they received was invalid as it had never been signed by Patrick Gorman. Allianz sent a letter to Patrick Gorman dated June 4, 2015 stating that the Power of Attorney is unacceptable (Allianz Depo Ex. 60). The following day, June 5, 2015, Barbara Gorman drives her mother, Frances Gorman, to Regions Bank and they placed a call to Allianz to try to facilitate the surrender of Patrick's annuity (Audio App. 5). This is the only call in 2015 in which Frances Gorman participates and her confusion, incapacity, and exploitation are evident from the call. Frances Gorman's participation in the call is less than a minute as the conversation is dominated by her daughter (Doherty Affidavit ¶ 5). Allianz fails to ever confirm the identity of the daughter and is confused as to the validity of the Power of Attorney. Nevertheless, Allianz agrees to expedite the process at Barbara Gorman's request. The Allianz representative acknowledges that Frances does not fully understand everything

and that the daughter should write a letter indicating that she can speak on Patrick's behalf (Audio App. 5). Again, none of the participants on this call had the authority to request funds from Patrick Gorman's annuity.

22.     On June 8, 2015, Barbara Gorman again calls Allianz posing as Frances Gorman attempting to expedite the surrender and delivery of funds from Patrick Gorman's annuity. Again, neither Barbara Gorman nor Frances Gorman had the authority to request funds from Patrick Gorman's annuity and Allianz continued to ignore the lack of authority (Audio App. 6).

23.     On June 10, 2015, Allianz makes it's one and only attempt to contact Patrick Gorman. At 8:35 a.m. (Audio App. 18, 19 and 20). The call is answered by Caroline Silha who advises Allianz representative, Jason Liston, that Patrick Gorman is in the hospital and is subject to a medical power of attorney. Caroline Silha advises Mr. Liston that her mother is totally confused with regard to the surrender of the policies and that her father has been in and out of the hospital since March 23, 2015 and can't write. Mr. Liston advises that Patrick Gorman has to sign in order for the contract to be surrendered but Caroline again advises that he can't sign, that he can't even hold a fork and that his fingers are curled. After being put on hold, Mr. Liston advises Caroline Silha that Allianz requires something that says he is incapacitated. After another hold, Mr. Liston advises that Allianz requires guardianship papers from the court. Mr. Liston states in the phone call that he confirmed that this is the only way to do the surrender. Caroline Silha then asks Mr. Liston if she "takes a piece of paper and he scribbles whatever he scribbles in front of a notary if that will work." Mr. Liston states "Yes, if he scribbles before a notary the funds could be released the very next day" despite having just advised that Allianz required guardianship papers from a court. Moreover, Mr. Liston states that just the signature page from the withdrawal form

would be acceptable but that the full form would "be best." Caroline Silha asks again if she gets this accomplished today would the funds be released tomorrow and Mr. Liston confirmed the same (Audio App. 18, 19 and 20).

24.     Less than two and one/half hours later, Caroline Silha faxes and emails to Robert Roper at Allianz, page 3 of the signature page for Form S2067 (Allianz Depo Ex. 61 and 62).   The page only references Patrick's contract and the signature and date are completely illegible. The request is incomplete in that it is missing pages 1 and 2 which is a violation of Allianz' requirements.  Without pages 1 and 2 there is no indication of the withdrawal option selected, the social security number verification, the payee information or tax elections selected. Allianz' corporate representative testified that Allianz, in essence, took this incomplete page 3 and utilized it with pages 1 and 2 of the prior request that was already deemed not in good order for Patrick Gorman to process the surrender and which had been canceled on May 28, 2015 (Allianz Depo Pg. 213, Line 24 – Pg. 214, Line 8, Ex. 52, Audio App. 2). Moreover, the notarization is a forgery.

25.     Nina Marie Ingoglia, the purported notary, testified in her deposition as to the forgery.   In 2015, she worked in her uncle's law firm and only notarized documents pertaining to his criminal practice.  She testified that this is not her signature and that she never notarized anything in a hospital or anything outside of the law office (Ingoglia Deposition. Pg. 5, Line 5 – Pg. 8, Line 1).

26.     Within hours after faxing and emailing the incomplete and illegible request, Caroline Silha again contacts Allianz by telephone to expedite the full surrender.  Caroline Silha again relays the urgency in acquiring the funds and confusion of her mother, Frances Gorman (Audio App. 9).

27.     The desperation, urgency and exigency in surrendering Patrick Gorman's

annuity is also evident in the calls over the next two days where Caroline Silha called eight times to confirm and expedite the acquisition of Patrick's funds (App. Audio 9, 10, 11, 12, 13, 14, 16 and 17.) The day after receiving the single signature page, Allianz surrendered Patrick Gorman's contract in the net amount of $162,587.42 (Allianz Depo Ex. 63). Allianz kept $109,357.35, which is the difference between the annuitization value and surrender value as a surrender penalty (Allianz Depo Pg. 171, Line 8 – Pg. 172, Line 5, Pg. 180, Line 11 to Line 20, and Ex. 49). The funds were wired to a Regions account and thereafter misappropriated by Barbara Gorman and Caroline Silha (Doherty Depo Ex. 6). Allianz again failed to utilize a three-tier annuity disbursement review and instead processed the surrender through an overseas vendor who Allianz could not confirm had been trained in Allianz' policies and procedures (Allianz Depo Pg. 178, Line 25 – Pg. 179, Line 17, Ex. 64 and 65). In fact, the overseas vendor did not accept the notarization but incredibly found that the owner's signature matched the original application (Allianz Depo Ex. 65).

## Legal Standard

28.    Summary Judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F. 3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson Corp. v. N. Crossarm Co.*, 357 F. 3d 1256, 1260 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 251).

29.     In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Tana v. Dantanna's*, 611 F. 3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F. 3d 815, 819 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts").  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. Of Pub. Educ.*, 495 F. 3d 1306, 1315 (11th Cir. 2007).

## Allianz' Negligence and Breach of Fiduciary Duty are Torts Independent of Any Contractual Duties, the Economic Loss Rule is Inapplicable and Allianz has waived this Defense

30.     Plaintiff has filed suit against Allianz for negligence and breach of fiduciary duty for the improper surrender of Patrick and Frances' annuities.  There are no claims for breach of contract but rather for Allianz' failure to act prudently in regard to the surrenders, for ignoring their own policies, standard operating procedures and training related to surrenders, for failure to follow its signature verification procedures and fraud prevention measures that clearly establish that Allianz was not only negligent but breached its fiduciary duty to Frances and Patrick Gorman.

31.     Allianz employees are trained on the signs of possible fraud or abuse known as "red flags" (App. 3, Bates 701).  Allianz defines red flags as "something that varies from the norm or signals something that requires further review" (App. 3, Bates 701 and 856).  Throughout their training Allianz provides some common red flags that were overlooked

which allowed the improper surrender of Frances and Patrick Gorman's annuities (App. 3, Bates 701, 733, 751, 755).  Pursuant to Allianz' own documents, the following are red flags that Allianz failed to recognize with regard to the surrender of Frances and Patrick's annuities:

- Signatures on request that are not consistent with other policy documents (App. 3, Bates 755 and 794);
- Discrepancies in the signature of any one person (App. 3, Bates 881);
- Forgery or alteration of any documents (App. 3, Bates 845 and 881);
- Submission of fraudulent counterfeit documents (App. 3, Bates 846);
- The re-use of an original document in a subsequent request (App. 3, Bates 755);
- The use of e-mail as a form of communication with a senior citizen (App. 3, Bates 751);
- The request by a caller to have policy information e-mailed but the e-mail address provided contains someone else's name (App. 3, Bates 881);
- Withdrawal request asking to have the funds delivered to an address other than the address of record for the policy owner (App. 3, Bates 881);
- The customer's relatives try to keep the customer from being questioned or spoken with directly (App. 3, Bates 795, 880 and 881);
- The phone number for the call does not match the phone number of record (App. 3, Bates 795, 880 and 881);
- The caller's voice indicates the wrong gender or age when compared with the owner of record (App. 3, Bates 701);
- The caller sounds much younger than the customer's age (App. 3, Bates 795 and 880);
- The caller's voice does not match other calls from the policy owner (App. 3, Bates 733);

32.    Allianz was negligent and breached its fiduciary duties to Frances and Patrick Gorman in the surrender of these annuities by not only ignoring all of the red flags and badges of fraud associated with the surrenders, but also in failing to adhere to its own policies and standard operating procedures including:

- The requirement that a new withdrawal form be submitted with each request (App. 2).
- The prohibition against modification and resubmission of original forms (App. 2).
- The requirement for written notification from the contract owner for full surrenders (App. 3, Bates 637);

- The requirement that a surrender request have a legible date (App. 3, Bates 642);
- The requirement that a surrender request include the selection of a withdrawal option (App. 3, Bates 642);
- The requirement that a surrender request include payee information (App. 3, Bates 642);
- The requirement that a surrender request include social security number verification (App. 3, Bates 642);
- The requirement that a surrender request include a withholding notice and election for distribution (App. 3, Bates 642);
- The requirement to adhere to its signature verification standard operating procedures when signatures on a surrender mismatch (App. 3, Bates 641);

33.     Allianz admits in its standard operating procedures that signature verification is "a key operational control prior to processing a disbursement.  It's the 1st line of defense in mitigating the risk of fraudulent requests being processed and the disbursement of funds to malicious fraudsters" (App. 3, Bates 664).   Allianz' standard operating procedures require that if there are red flags of suspected fraud with regard to signature verification, the special investigations unit must be contacted (App. 3, Bates 666).  According to the policy history journals, no such contact was made (Allianz Depo Ex. 21 and 28).

34.     Allianz' standard operating procedures also require that a request form must be signed and dated to be valid and that the signature must be signed and dated the same as the owner's signature in order for a notarized signature to be valid (App. 3, Bates 666 and 668). Allianz admitted in its Answer to the Amended Complaint that the signature and notary date are not the same but claim under Illinois law that it is an acceptable notarization (Doc. 8, Pg. 4).  Regardless of whether or not the notarization is acceptable under Illinois law, it is unacceptable and must be rejected under Allianz' standard operating procedures (App. 3, Bates 668).  Allianz filed a motion to amend their answer to try and cure this fatal admission (Doc. 25).  The motion remains pending.

35.     Allianz' standard operating procedures further provide that a request must be

rejected if the notary seal is received on the same old request form which was previously rejected for mismatch of signature (App. 3, Bates 668). Nevertheless, Allianz accepted as valid a single signature page which it commingles with two pages from the old request form which was previously rejected for mismatch of signature (Allianz Depo Ex. 50).

36.     Allianz' procedures allow for a signature verification by the contract owner on a recorded line (App. 3, Bates 671). However, this was never done. Finally, Allianz' procedures allow for a confirmation of the signature date over a recorded call but again this was never done (App. 3, Bates 671).

37.     One of the most alarming facts is the fact that Allianz had up to six months to process these surrenders. (Allianz Depo Ex. 12 and 31) but at the behest of unauthorized individuals in a sea of red flags of fraud, Allianz surrendered these policies on an expedited basis and realized a substantial financial benefit in the form of surrender penalties in doing so.

38.     Allianz' negligence and breach of fiduciary duty are independent of any contractual duties. Allianz relies upon *Tiara Condo Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) in support of its Motion for Summary Judgment. However, the Florida Supreme Court, in no uncertain terms, established that the economic loss rule applies only in product liability contexts. The case at hand is not a products liability case. There are no claims for breach of contract, there has been no recast of causes of action that are otherwise breach of contract claims and the negligence and breach of fiduciary duty claims are independent of any contractual duties owed by Allianz.

39.     Finally, under Rule 8(c)(1) and 12(b) of the Federal Rules of Civil Procedure, a party must affirmatively state any avoidance or affirmative defense in responding to a pleading. Allianz filed its Answer and Affirmative Defenses to Amended Complaint on June

6, 2018 (Doc. 8) and asserted sixteen affirmative defenses. None of the affirmative defenses asserted the economic loss rule or set forth a defense that Plaintiff failed to assert a tort independent of any alleged duty owed by Allianz under the terms of the annuity contracts. Allianz' Fourth and Seventh Affirmative Defenses which did address the express terms of the contract and Allianz' duties owed under the contracts were dropped as affirmative defenses in Allianz' Objections and Responses to Plaintiff's First Set of Interrogatories (App. 4).[2] Plaintiff is prejudiced in responding to this unpled affirmative defense at this late stage when Allianz declined to provide discovery on contractual duties and the express terms of the contracts.

### Allianz owed a Fiduciary Duty to Patrick and Frances Gorman

40.   A fiduciary relationship exists between parties when there is some degree of dependency on one side and there is some degree of undertaking on the other side to advise, counsel, and protect the weaker party. *Watkins v. NCNB National Bank of Florida, N.A.,* 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993, rev. denied 634 So. 2d 629 (Fla. 1994). *See also, Bankfest Imports, Inc., v. ISCA Corp.,* 717 F. Supp. 1537 (S.D. Fla. 1989) and *Barnett Bank of West Florida v. Hooper,* 498 So. 2d 923 (Fla. 1986). A fiduciary relationship may be either expressed or implied. *Maxwell v. First United Bank,* 782 So. 2d 931, 933 (Fla. 4th DCA 2001). In the case at hand Patrick and Frances' degree of dependency is evident from their age and the disclosure of their limitations and confusion in the recorded calls with Allianz. Allianz was advised multiple times that Patrick was in the hospital and subject to a medical power of attorney. Allianz was further advised as to Frances' confusion, and reliance upon others. Moreover, Allianz undertook to advise, counsel, and attempt to

---

2 Allianz also dropped its Eleventh, Twelfth and Fourteenth Affirmative Defenses in its Objections and Responses to Plaintiff's First Set of Interrogatories and Objections and Responses to Plaintiff's Second Request for Production of

protect Patrick and Frances Gorman.

41.     Pursuant to Allianz' anti-fraud training, it has acknowledged that its employees, according to various regulatory agencies and states, are integral anti-fraud personnel that play an important role in preventing fraud (App. 3, Bates 693). Allianz considers this role to be a serious responsibility (App. 3, Bates 693). Allianz admits that protecting the consumer against fraud or abuse is the responsibility of every employee and that they are in the best position to detect potential fraud and fraud abuse (App. 3, Bates 694, 801 and 824). Allianz repeatedly acknowledges throughout its anti-fraud manuals that every one of its employees has a responsibility to detect and report fraud (App. 3, Bates 694 and 839).

42.     Allianz' undertaking to protect Patrick and Frances Gorman was established at the commencement of the relationship by the Allianz president, Charles Kavitsky. Allianz acknowledged its responsibility to Patrick and Frances, assured them that their money would be safe and available when they needed it and that the safety of the funds entrusted to them was utmost in their minds. (App. 6 and 7).

## Patrick and Frances Gorman have been injured by the Improper Surrender of the Annuity Contracts

43.     Frances and Patrick Gorman have suffered mightily as a result of Allianz' failures. The annuitization value of Patrick Gorman's annuity would have had a value as of May 9, 2019 of $368,480.06 based upon the allocations in place at the time of the improper surrender. The annuitization value of Frances Gorman's annuity would have had a value as of May 9, 2019 of $180,094.38 based upon the allocations in place at the time of the improper surrender (Doherty Affidavit ¶ 7). Additionally, Frances and Patrick Gorman

---

Documents (App. 4 and 5).

incurred a $48,370.00 tax obligation as a result of the surrendered contracts. (Doherty Affidavit ¶ 8). Assuming, *arguendo*, that Allianz could shift liability to others, Patrick and Frances Gorman have still been damaged by the surrender penalties imposed upon them by Allianz.

## Allianz is not Relieved of Liability because of Intervening Intentional Torts

44.    Allianz seeks to ignore their culpability and shift the blame for the damages they caused onto third parties, namely Caroline Silha, Barbara Gorman and Regions Bank.

45.    Allianz' reliance on *East Coast Electric v. Dunn*, 979 So. 2d 1018 (Fla. 3d DCA 2008) is misplaced as it pertains to subsequent negligent acts and not intentional acts as present in the case at hand.  Moreover, the Third DCA in *East Coast Electric* recognized that for an intervening cause to relieve the original tortfeasor of liability the intervening cause must be unforeseeable and "completely independent of and not in any way set in motion by the tortfeasor's negligence." (citing *Townsend v. West Side Dodge, Inc.*, 642 So. 2d 49 (Fla. 1st DCA 1994).  In the case at hand, Allianz' negligence and breach of fiduciary duty in failing to adhere to its own standards, procedures and training set in motion the subsequent intentional acts of Barbara Gorman and Caroline Silha and negligence of Regions Bank.  But for Allianz' improper surrender of the annuity contracts there would have been no misappropriation.

46.    Allianz' reliance on *Key Bank of Tampa v. Saab-Scania of America, Inc.*, 549 F. Supp. 96, (M.D. Fla. 1982) and *Gulfstar, Inc. v. Advance Mortgage Corp.*, 376 So. 243 (Fla. 3d DCA 1979) both dealing with commercial transactions and duplicate sale documents is equally misplaced.  In neither case was the intervening intentional tort foreseeable as opposed to the case at hand where Allianz' failure to comply with its own fraud procedures resulted in the foreseeable fraud the procedures were meant to protect.

47.    The attempt to shift blame is contrary to Florida Statute 768.31 which only allows a right of contribution "when two or more persons become jointly or severally liable in tort for the **same injury."** The negligence and breach of fiduciary duty in this case are separate and distinct injuries from the intentional torts committed by Caroline Silha and Barbara Gorman and the negligence of Regions Bank after the improper surrenders. As such 768.31 does not apply.  Further, 768.31(2)(g) specifically states that the Act shall not apply to breaches of trust or of other fiduciary obligations. *See also, SunBank/South Florida, N.A. v. Lugo*, (U.S. Bky Ct., SD 140 Br. 917, 1992).

48.    Allianz' defense is inapplicable in this action because any alleged tortfeasor (specifically the sisters) have committed <u>intentional torts</u>. The Florida Supreme Court explained in *Merrill Crossings* that Section 768.81, Florida Statutes, dealing with comparative fault, does not permit allocation of fault between both negligent and intentional tortfeasors. The Supreme Court explained that negligent acts are fundamentally different from intentional acts. *Merrill Crossings v. McDonald*, 705 So. 2d 560 (Fla. 1997). *See also, Jones v. Budget Rent-A-Car Systems, Inc.*, 723 So. 2d 401 (Fla. 3d DCA 1999). Further, a jury cannot apportion negligent liability on one who commits an intentional tort. *See, Wyke v. Polk County School Board*, 137 F. 3d 1292 (Fla. 11th Cir. 1998) and *Millette v. DEK Technologies, Inc.*, 2009 WL 3242010 (SD Fla. 10/06/09).

49.    *Merrill Crossings* further stated that it would be irrational to allow a party who negligently fails to provide reasonable security measures to reduce his liability because there is an intervening intentional tort where the intervening intentional tort is exactly what the security measures are supposed to protect against.  The same analysis and logic apply here.  As Plaintiff stated in her deposition, she is not suing Allianz for the theft committed by her sisters.  She is suing Allianz for the improper surrender and failure to protect against

the fraud that allowed the intentional tort (Doherty Depo Pg. 224, Line 14 – Pg. 225, Line 9).

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Allianz' Motion for Final Summary Judgment.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of April 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Scott E. Byers, Esquire
Carlton Fields Jorden Burt, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida  33131
Telephone:  (305) 530-0050
Facsimile: (305) 530-0055
sbyers@carltonfields.com
Attorneys for the Defendant

HARLLEE & BALD, P.A.

By:___/s/ Adam Mohammadbhoy_____
        ADAM MOHAMMADBHOY
        Florida Bar No.  0137367
        202 Old Main Street
        Bradenton, FL 34205
        Telephone: 941/744-5537
        Facsimile: 941/744-5547
        Primary Email: AM@harlleebald.com
        Secondary: LS@harlleebald.com
        Attorney for Plaintiff