UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARIAN E. DOHERTY, as
Guardian of Frances R.
Gorman and Executor of the
Estate of Patrick J. Gorman,

        Plaintiff,

v.                         Case No:  2:18-cv-377-FtM-29NPM

ALLIANZ LIFE INSURANCE
COMPANY OF NORTH AMERICA, a
foreign corporation
authorized to do business in
the State of Florida,

        Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on the defendant's Motion for Final Summary Judgment (Doc. #31) filed on April 19, 2019. Plaintiff filed a Response (Doc. #38) on May 17, 2019.  For the reasons set forth below, the motion is denied.

**I.**

    Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us,

<u>Inc.</u>, 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Anderson</u>, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999)(quoting <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant

summary judgment." <u>Allen v. Bd. of Pub. Educ.</u>, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

On May 17, 2018, Marian E. Doherty, as Guardian of Frances Gorman and Executor of the Estate of Patrick Gorman, filed an Amended Complaint against defendant Allianz Life Insurance Company of North America (Defendant) in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.[1] (Doc. #2.) On May 30, 2018, Defendant removed the Amended Complaint to this Court on the basis of diversity jurisdiction. (Doc. #1.) The Amended Complaint asserts claims against Defendant for negligence (Count I) and breach of fiduciary duty (Count II).

The undisputed facts are as follows: In May of 2003, Patrick Gorman purchased a BonusDex annuity (the Patrick Annuity) from Defendant for a premium of approximately $202,403.00.[2] (Doc. #32-4, p. 3.) Frances Gorman also purchased a BonusDex annuity (the Frances Annuity) from Defendant in May of 2003 for a premium of

---

[1] The Court will refer to Patrick and Frances Gorman collectively as "the Gormans."

[2] The precise value of the premium paid for the Patrick Annuity is unclear to the Court. The parties assert the initial premium was $201,591.00; however, the Policy Schedule for the Patrick Annuity reflects that the initial premium was for $202,403.00. (Doc. #32-4, p. 3.)

approximately $101,775.00.[3] (Doc. #32-3, p. 3.) The Gormans lived

part-time in Naples, Florida at this time in 2003. (Doc. #32-1,

p. 5.) In or about 2013, the Gormans began living full-time in

Illinois with their daughter, Caroline Silha. (Id. p. 31.)

On May 21, 2015, Defendant received two phone calls from

Frances Gorman, or a person purporting to be Frances Gorman.[4] In

those phone calls, the caller asked, "if I want to take the cash

value out [of the Frances annuity], what do I need to do?" (Doc.

#42-5, p. 3.) The caller also stated, "I need to get a total of

$210,000, between [the Frances Annuity and the Patrick Annuity],"

and asked, "do I have to cash out fully, or how does that work?"

(Doc. #42-5, p. 8.) The caller asked that any relevant annuity

surrender forms be emailed to Caroline Silha's email address. (Id.

p. 7.) Also on May 21, 2015, Defendant received a faxed Withdrawal

Request Form for Annuity Contract, which requested a full surrender

of the Patrick Annuity and the Frances Annuity. (Doc. #32-11.)

It requested that the funds be wired into the Gormans' shared

---

[3] The precise value of the premium paid for the Frances Annuity
is also unclear to the Court. The parties allege that the initial
premium was $103,147.80; however, the Policy Schedule for the
Frances Annuity reflects that the initial premium was $101,775.00.
(Doc. #32-3, p. 3.)

[4] Plaintiff asserts that Frances Gorman did not make these
phone calls. Plaintiff alleges that Frances Gorman's daughter,
Barbara Gorman, made these phone calls and posed as Frances Gorman.
It is unclear to the Court whether Defendant disputes this alleged
fact.

Regions bank account and that federal income tax be withheld at the rate of 10%. (Id.) On May 22, 2015, Defendant received another call from Frances Gorman, or someone purporting to be Frances Gorman.[5] (Doc. #42-5, p. 12.) In the phone call, the caller inquired about the status of the surrender requests for the Patrick Annuity and the Frances Annuity. (Id. pp. 12-16.)

On May 26, 2015, Defendant mailed a letter to Frances Gorman, indicating that it received and was reviewing her annuity surrender request. (Doc. #32-13.) The letter stated: "Your contract's current Accumulation/Annuitization Value is $141,602.00 and its Surrender Value is $86,706.01. By surrendering your contract now, you are giving up the difference between these two values." (Id. p. 2.) Defendant completed the surrender of the Frances Annuity on June 1, 2015 and wired $78,052.63 – the post-tax surrender value – into the Gormans' Regions bank account in Collier County, Florida. (Doc. #32-14, p. 2; Doc. #32-1, pp. 16-17.)

On May 28, 2015, Defendant mailed Patrick Gorman a letter, stating that it could not process his annuity surrender request because "[t]he signature on [his] request form [did] not match [his] original owner's signature on the application." (Doc. #32-15, p. 2.) The letter further requested that Patrick Gorman

_____

[5] Plaintiff also asserts that this phone call was made by Barbara Gorman posing as Frances Gorman.

provide a notarized signature. (Id.) On May 29, 2015, Frances

Gorman, or someone purporting to be Frances Gorman, called

Defendant to inquire about the status of the Patrick Annuity

surrender.[6] (Doc. #40-3.) The caller informed Defendant's

representative that Patrick Gorman's signature did not match

"because he has health issues and his hand doesn't operate like it

did when it was 20 years ago." (Id. p. 7.) The caller further

informed Defendant's representative that she was "in the process

of getting [] power of attorney paperwork submitted" because

Patrick Gorman was in the hospital and unable to travel to have

his signature notarized. (Id. pp. 7-8.)

On June 2, 2015, Defendant received an email from Caroline

Silha, which stated that it attached "the final paperwork []

Frances Gorman thinks is needed to finish processing the funds

[Patrick and Frances Gorman] want to access." (Doc. #32-16, p.

2.) Attached to the email was a Power of Attorney for Property,

which stated in relevant part:

> I, Patrick J. Gorman of 574 Laguna Royal Blvd., Naples,
> Fl. 34119, hereby appoint my Wife, Frances Gorman, if
> for any reason Frances is unable to make the decisions,
> I hereby appoint my daughters, Barbara Gorman of 2800 N.
> Talman Ave. Unit Q. Chicago, IL 60618 and Caroline Silha
> of 6180 Indian Trail Rd., Gurnee, IL 60031 as my
> attorney-in-fact (my "agent") to act for me and in my
> name (in any way I could act in person) . . . .

---

[6] Plaintiff again asserts this phone call was made by Barbara
Gorman posing as Frances Gorman.

(Id. p. 5.)   The Power of Attorney for Property was signed by Frances Gorman and notarized by Sabine Landshof, a Notary Public of the State of Illinois.   (Id. p. 8.)   Defendant mailed a letter to Patrick Gorman on June 4, 2015, stating that it received "a request to register the Power of Attorney on [his account]," but was unable to process the request because the Power of Attorney for Property was not signed by Patrick Gorman.   (Doc. #32-17, p. 2.)

On June 5, 2015, Defendant received a call from a Regions Bank branch manager; the branch manager was with Frances Gorman and Frances Gorman's daughter, Barbara Gorman.   (Doc. #40-5, p. 2.)   The branch manager noted to Defendant's representative that Frances Gorman was anticipating a wire transfer from the Patrick Annuity, but that it had not yet been received by Regions Bank. (Id.)   Defendant's representative spoke with Barbara Gorman about the status of the Patrick Annuity surrender and informed her that the Power of Attorney for Property was invalid and, as a result, the surrender had not been initiated.   (Id. p. 9.)   Defendant's representative also noted to Barbara Gorman that, "[y]our mom doesn't seem like she's really, you know, fully understands everything, what's [sic] going on.   You may wanna write a letter saying that you can also speak on your dad's behalf."   (Id. p. 15.)

On June 10, 2015, one of Defendant's representatives attempted to call Patrick Gorman. (Doc. #32-19.) Caroline Silha answered the phone and stated Patrick Gorman was unavailable because he "[was] in the hospital." (Id. p. 2.) Defendant's representative explained to Caroline Silha that the Power of Attorney for Property was invalid because Patrick Gorman did not sign it and "he has to actually sign it in order for it to be valid." (Id. p. 3.) Caroline Silha then told Defendant's representative that he did not sign the Power of Attorney for Property because "he can't even hold [a] fork any longer" and "his fingers are all . . . curled up underneath." (Id.)

Defendant's representative informed Caroline Silha that, because of Patrick Gorman's condition, Defendant required "guardianship paper[s] from [a] court" in order to process the Patrick Annuity surrender. (Id. at 5.) Caroline Silha responded by asking Defendant's representative, "if I take a piece of paper [to the hospital] and [Patrick Gorman] scribbles whatever he scribbles in front of a notary . . . and he scribbles, whatever it is, I mean, I'm asking, if it's illegible, if I, I mean I'm gonna print . . . his name underneath it for you . . . can you release the funds?" (Id. p. 6.) Defendant's representative stated, "[i]f it's notarized, official stamp, notary seen as Illinois, then, yes. Then we can, we can process [the surrender]." (Id.) Defendant's representative further stated to Caroline

Silha, "just get a signature page or a letter of instruction typed up or best thing would be at least the signature page for the withdrawal form. Just have him do that" and the Patrick Annuity would be surrendered within one day. (Id.)

Later on June 10, 2015, Caroline Silha faxed Defendant a signed signature page of the Withdrawal Request Form for the Patrick Annuity. (Doc. #32-20.) The Withdrawal Request Form signature page indicated it was page "3 of 3"; pages 1 and 2 were not included. (Id. p. 3.) The Withdrawal Request Form contained an "Official Seal" notary stamp and signature of Nina Marie Ingoglia, Notary Public of the State of Illinois. (Id.)

On June 11, 2015, Defendant mailed a letter to Patrick Gorman, informing him that Defendant had processed his request and "sent a wire transfer in the amount of $162,587.42" to his Regions bank account in Collier County, Florida. (Doc. #32-21, p. 2; Doc. #32-1, p. 17.) By fully surrendering the Patrick Annuity, Defendant retained the difference between the Patrick Annuity's Accumulation/Annuitization Value of approximately $289,723.16 and the Surrender Value of approximately $180,365.81. (Doc. #42-5, p. 33.)

On or about December 17, 2018, Caroline Silha and Barbara Gorman were charged with financial exploitation of an elderly person under Illinois state law. (Doc. #32-27; Doc. #32-28.)

Caroline Silha and Barbara Gorman pled not guilty to the charges.
(Doc. #32-29; Doc. #32-30.)

### III.

Defendant now moves for summary judgment on Counts I and II.
Defendant argues it is entitled to summary judgment because (1)
Plaintiff has "not asserted any tortious act independent of the
parties' contractual relationship" (Doc. #31, p. 22); (2)
Defendant owed Plaintiff no legal duty under Florida negligence
principles; (3) no fiduciary duty exists between an insurer and an
insured; (4) Plaintiff "failed to put forth admissible evidence to
demonstrate an injury" (Id. p. 25); and (5) as a matter of law,
Defendant could not be the proximate cause of the Gormans' alleged
damages.

### A.    The Economic Loss Rule

Defendant argues it is entitled to summary judgment on Counts
I and II because, pursuant to Florida's economic loss rule, a tort
claim must be independent of a breach of contract claim.  The Court
disagrees.

Historically under Florida law[7], the economic loss rule barred
a plaintiff's claim "where the parties are in contractual privity

---

[7] This action is governed by Florida law.  See Tech. Coating
Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th
Cir. 1998)("[A] federal court sitting in diversity jurisdiction
applies the substantive law of the forum state.").

and [the plaintiff] seeks to recover damages in tort for matters arising out of the contract." Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1223 (Fla. 2010). The economic loss rule had "its roots in the products liability arena, and was primarily intended to limit actions in the products liability context." Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 110 So. 3d 399, 401 (Fla. 2013). Florida courts eventually extended the economic loss rule beyond the products liability context. Id. at 402.

In Tiara, the Florida Supreme Court recognized that the economic loss rule had undergone an "unprincipled extension" beyond its roots in the products liability arena and thus "return[ed] the economic loss rule to its origin in products liability." Id. at 406-07. In so holding, the court "recede[d] from [its] prior rulings" expanding the economic loss rule beyond products liability cases and expressly "limit[ed] the application of the economic loss rule to cases involving products liability." Id. at 407. The court reasoned that the "expansion of the rule beyond its origins was unwise and unworkable in practice." Id.

In a concurring opinion, Justice Pariente noted that, despite the majority limiting the economic loss rule to products liability cases, "in order to bring a valid tort claim, a party still must demonstrate that . . . the tort is independent of any breach of contract claim." Id. at 408. In contrast, Justices Canady and Polston noted in dissenting opinions that, as a result of Tiara,

"there are [now] tort claims and remedies available to contracting parties in addition to the contractual remedies which, because of the economic loss rule, were previously the only remedies available." Id. at 410. The Eleventh Circuit has noted that whether the concurring or dissenting approach controls is "still unclear . . . ." Lamm v. State St. Bank & Tr., 749 F.3d 938, 947 (11th Cir. 2014).

Following Tiara, some district courts have adhered to Justice Pariente's interpretation and found that a tort claim must be independent of any claim for breach of contract. See Kaye v. Ingenio, Filiale De Loto-Quebec, Inc., No. 13-61687-CIV, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014)(finding that a party "must [still] allege action beyond and independent of breach of contract that amounts to an independent tort" (citations omitted)); F.D.I.C. v. Wolkowitz Appraisal Consultants, Inc., No. 12-CV-60916, 2014 WL 12862210, at *1 (S.D. Fla. Jan. 16, 2014)(same). Other district courts have found the dissent's approach more persuasive. See F.D.I.C. v. Floridian Title Grp. Inc., 972 F. Supp. 2d 1289, 1298 (S.D. Fla. 2013)(finding that the economic loss rule did not bar the plaintiff's claims for breach of fiduciary duty and negligent misrepresentation because the "case [was] not a products liability case" and "[t]hus[] the economic loss rule [did] not apply"); Carl's Furniture, Inc. v. APJL Consulting, LLC, No. 15-60023-CIV, 2015 WL 1467726, at *4 (S.D.

Fla. Mar. 30, 2015)(noting that "the Florida Supreme Court has not adopted Justice Pariente's concurrence as controlling law").

This Court has previously found that, after Tiara, the economic loss rule does not bar claims in a non-products liability context. See B&H Farms, LLC v. Winfield Sols., LLC, No. 2:16-CV-323-FTM-99, 2016 WL 6138625, at *2 (M.D. Fla. Oct. 21, 2016)(noting that "the economic loss rule [did] not bar the [plaintiff's negligence] claim" because the case was not a products liability case); Zoom Tan, LLC v. Heartland Tanning, Inc., No. 2:12-CV-684-FTM-29, 2013 WL 5720140, at *5 (M.D. Fla. Oct. 21, 2013)(noting that "the economic loss rule cannot serve as a basis for dismissing [the] plaintiff's claims for negligent misrepresentation" because the Florida Supreme Court "confined the application of the economic loss rule to cases involving products liability").  Because this is not a products liability case, the Court finds Plaintiff's claims are not barred by the economic loss rule.

Assuming *arguendo* that the Tiara concurrence approach applies, the Court finds plaintiff has nonetheless alleged torts independent of breach of contract.[8]  As discussed *infra*, Florida

---

[8] Defendant argues that any alleged tort is not independent of a claim for breach of contract because Plaintiff testified at deposition that she believes Defendant's duty to the Gormans arises out of the annuity contracts.  The Court, however, is unpersuaded by Plaintiff's lay opinion as to the source of Defendant's legal duty.

law recognizes that the negligent disbursement of funds is an independent tort.  See Nat'l Title Ins. Co. v. Lakeshore 1 Condo. Ass'n, Inc., 691 So. 2d 1104, 1108 (Fla. 3d DCA 1997)("[O]ne who undertakes to act for another in the disbursing of funds is answerable for failure to do so with due care." (citation and quotation omitted)).  Moreover, a claim for breach of fiduciary duty is a "well-established [independent] tort[] . . . even if there is an underlying oral or written contract." Invo Fla., Inc. v. Somerset Venturer, Inc., 751 So. 2d 1263, 1267 (Fla. 3d DCA 2000).

**B.    Whether Defendant Owed the Gormans a Duty under Florida Negligence Principles**

As to Count I, Defendant argues that it owed the Gormans no legal duty as a matter of Florida law.  The Court disagrees.

The elements of a claim for negligence under Florida law are (1) duty, (2) breach, (3) causation, and (4) damages.  Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003).  "[T]he determination of whether a duty is owed presents a question of law to be determined by the court." Jackson Hewitt, Inc. v. Kaman, 100 So. 3d 19, 28 (Fla. 2d DCA 2011).  Thus, "if no legal duty exists, then no action for negligence may lie." Jenkins v. W.L. Roberts, Inc., 851 So. 2d 781, 783 (Fla. 1st DCA 2003)(citations omitted).

Florida law recognizes that "[t]he obvious duty of care when managing funds for others is to use reasonable care to avoid depletion through negligent management or mismanagement." Nat'l Title Ins. Co. v. Lakeshore 1 Condo. Ass'n, Inc., 691 So. 2d 1104, 1107 (Fla. 3d DCA 1997). This is so because a party that manages funds for others creates "[t]he foreseeable risk [of] the depletion of the [funds] belonging to others." Id. Thus, "[o]ne who undertakes to act for another in the disbursing of funds is answerable for failure to do so with due care." Id. at 1108 (citation and quotation omitted).

In this case, Defendant undertook "to act for [the Gormans] in the disbursing of funds" from the Patrick and Frances Annuities. Id. Thus, the Court finds Defendant owed the Gormans a duty "to avoid depletion through negligent management or mismanagement." Id. at 1107.

## C.   Whether Defendant Owed the Gormans a Fiduciary Duty

As to Count II, Defendant agues it is entitled to summary judgment because no fiduciary duty existed between the Gormans and Defendant. The Court disagrees.

Defendant contends that it owed the Gormans no fiduciary duty because, "as a matter of well-settled Florida law, insurers do not owe a fiduciary duty to their insured . . . ." (Doc. #31, p. 24.) Defendant is correct that a fiduciary duty does not exist between an insurer and insured "in a first-party bad faith action . . . ."

State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 59 (Fla. 1995). This case, however, is not a first-party bad faith action. Indeed, although Defendant is a life insurance company, the Buyer's Guide to Fixed Deferred Annuities attached to both the Patrick and Frances Annuities expressly states that such an "annuity is neither a life insurance nor a health insurance policy." (Doc. #32-3, p. 11; Doc. #32-4, p. 11.)

Defendant also argues it owed the Gormans no fiduciary duty because their "relationship [was] contractual in nature." (Doc. #31, p. 24.) Defendant is again correct that, in a first-party bad faith action, the relationship between an insurer and an insured is akin to that of a creditor and debtor, and "[i]n the usual creditor-debtor relationship a fiduciary duty does not arise." Watkins v. NCNB Nat. Bank of Fla., N.A., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)(citation omitted); Cardenas v. Miami-Dade Yellow Cab Co., 538 So. 2d 491, 495 (Fla. 3d DCA 1989), abrogated on other grounds by Auto-Owners Ins. Co. v. Conquest, 658 So. 2d 928 (Fla. 1995). As noted above, however, this is not a first-party bad faith action. Moreover, Florida law recognizes a fiduciary duty in a creditor-debtor relationship where the creditor "establishes a confidential or fiduciary relationship with a customer and the transaction is one from which the [creditor] is likely to benefit." Watkins, 622 So. 2d at 1065. To establish such a fiduciary relationship, "a party must allege

some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Id. Whether a fiduciary duty exists is an issue of fact. Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011); Morton v. Young, 311 So. 2d 755, 756 (Fla. 3d DCA 1975).

Here, Plaintiff has raised an issue of fact as to whether the Gormans placed their confidence in Defendant and whether Defendant undertook to "to advise, counsel, and protect" the Gormans. Watkins, 622 So. 2d at 1065. For instance, in a letter "[p]repared especially for" Patrick and Frances Gorman, Defendant thanked and congratulated the Gormans for purchasing a BonusDex annuity and stated, "[w]e appreciate your confidence and are mindful of our responsibility to you and your family or business." (Doc. #32-3, p. 41; 32-4, p. 41.) The letter further provides that "you have peace of mind knowing that your money is safe . . . [u]tmost in our minds is the safety of the funds you entrust to our care." (Id.)

Viewing the foregoing evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has raised an issue of fact as to whether Defendant owed the Gormans a fiduciary duty to protect the Gormans from fraudulent surrenders of the Patrick and Frances Annuities. Resolution of this factual matter is inappropriate on a motion for summary judgment. Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011)(Whether "an implied

fiduciary relationship existed . . . should be considered by a jury."); <u>Browning v. Peyton</u>, 918 F.2d 1516, 1522 (11th Cir. 1990)(Under Florida law, summary judgment is inappropriate where "questions of fact [exist] as to whether a fiduciary relationship ha[s] been established.").

**D.  Whether Plaintiff Has Submitted Evidence Demonstrating Injury**

Defendant argues that, aside from the mere fact that the Patrick and Frances Annuities were surrendered, Plaintiff has submitted no evidence raising an issue of fact was to whether the annuities "were 'improperly surrendered' because the Gormans did not intend to surrender them."  (Doc. #31, p. 26.)  The Court disagrees.

As to the Frances Annuity, Plaintiff has submitted an affidavit in which she avers that Frances Gorman's daughter, Barbara Gorman, impersonated Frances Gorman on the phone calls attempting to expedite the Frances Annuity surrender.  (Doc. #41-1, p. 2.)  In addition, as discussed *supra*, Plaintiff has set forth evidence detailing that one of Defendant's representatives, after speaking on the phone with Frances Gorman, noted that Frances Gorman did not "seem like she[] really . . . fully underst[ood] everything, what's [sic] going on."  (Doc. #40-5, p. 15.)

As to the Patrick Annuity, Plaintiff has submitted evidence indicating that the surrender form - purportedly notarized by Nina Marie Ingoglia – bears a forged signature of Ms. Ingoglia.  At

deposition, Ms. Ingoglia testified that her signature next to her notary stamp on the withdrawal form was "definitely not [hers]" and that she did not notarize the surrender form. (Doc. #42-11, p. 7.) The Court finds that the foregoing evidence raises an issue of fact as to whether the Patrick and Frances Annuities were "improperly surrendered."

**E.    Proximate Causation**

Defendant lastly argues it is entitled to summary judgment on Counts I and II because, as a matter of law, Defendant cannot be the proximate cause of the Gormans' alleged damages.  The Court disagrees.

To establish claims for both negligence and breach of fiduciary duty, a plaintiff must demonstrate that the defendant was the proximate cause of his or her damages.  Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002); Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1227 (Fla. 2010).  The issue of proximate causation "is generally a question of fact concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred."  Goldberg v. Fla. Power & Light Co., 899 So. 2d 1105, 1116 (Fla. 2005)(citation and quotation omitted).  "[H]arm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or

omission in question." <u>McCain v. Fla. Power Corp.</u>, 593 So. 2d 500, 503 (Fla. 1992)(citation omitted).

As a matter of Florida law, proximate causation cannot be established where "an intervening cause is completely independent of, and not in any way set in motion by, the tortfeasor's negligence . . . ." <u>Deese v. McKinnonville Hunting Club, Inc.</u>, 874 So. 2d 1282, 1287-88 (Fla. 1st DCA 2004). Thus, as a general principle, "an intervening criminal act breaks the chain of causation, and therefore the original negligence of the defendant cannot be the proximate cause of the damage resulting from the intervening criminal act . . . ." <u>Nicholas v. Miami Burglar Alarm Co.</u>, 266 So. 2d 64, 66 (Fla. 3d DCA 1972). However, when an "intervening criminal act, or the loss therefrom, is foreseeable, then the original actor's negligence may be considered the proximate cause of the loss, and he may be liable, notwithstanding the intervening criminal act." <u>Singer v. I. A. Durbin, Inc.</u>, 348 So. 2d 370, 372 (Fla. 3d DCA 1977)(citation omitted).

The issue "of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve." <u>McCain</u>, 593 So. 2d at 504. Thus, where "reasonable persons could differ as to whether the facts establish proximate causation . . . then the resolution of the issue must be left to the fact-finder." <u>Id.</u>

Here, Defendant argues it was not foreseeable that the funds from the Patrick and Frances Annuities would be misappropriated by Barbara Gorman and Caroline Silha after being wired to the Gormans' Regions bank account. Defendant reasons that Barbara Gorman and Caroline Silha's allegedly criminal actions were unforeseeable intervening acts that broke the chain of causation. Thus, Defendant contends, Plaintiff cannot satisfy the proximate causation element as a matter of law. In response, Plaintiff argues that Defendant's internal policies demonstrate that the Gormans' damages were indeed foreseeable.

In relevant part, Defendant's internal policies provide that "[s]ignature verification is . . . the 1st line of defense in mitigating the risk of fraudulent requests being processed and the disbursement of funds to malicious fraudsters." (Doc. #39-3, p. 7.) Defendant's internal policies also provide that a senior citizen's use of email may be a "red flag" indicating that fraudulent activity is occurring, because it is "not common for a senior citizen to use email as a form of communication." (Id. p. 16.)

As noted *supra*, there are several unresolved factual issues in this case, including whether Barbara Gorman posed as Frances Gorman on phone calls to Defendant and whether the Patrick Annuity's surrender form contains Patrick Gorman's forged signature. In light of these issues of fact, and given that

Defendant's own internal policies contemplate the potential "disbursement of funds to malicious fraudsters," the Court finds that "reasonable persons could differ as to whether the facts establish" that Barbara Gorman and Caroline Silha's alleged misappropriation of the Gormans' funds was foreseeable. McCain, 593 So. 2d at 504. Thus, resolution of the issue of proximate causation is not appropriately decided on summary judgment in this case. Id.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Final Summary Judgment (Doc. #31) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __20th__ day of August, 2019.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record